20-3608, 20-1099, 20-3104, and 20-3107 from the Western District of Missouri, DesignWorks Holmes et al. versus Columbia House of Brokers Realty et al., and DesignWorks et al. versus Susan Horak et al. Mr. Keenan, the court will hear from you again. Thank you, Your Honor, and may it please the court. This appeal raises a discrete question of statutory interpretation about the meaning of 17 U.S.C. § 120a and what the meaning of the term other pictorial representations means. The other types of works identified in 120a are all types of artistic works, paintings, photographs, and other pictorial representations. We note in our briefing, and we believe that the conspicuous absence of any terms that had been used to describe architectural plans historically, the distinctions drawn in the 1909 Act and then codified in the 1976 Act when they reworked the definition of PGS, or Pictorial Graphic and Sculptural Works, the use of only pictorial and neither graphic nor sculptural works in 120a, the reordering of those words in the Byrne Convention Implementation Act where architectural plans were specifically added as a subset of technical drawings, which they had always been treated as. The amendment in the AWCPA where the Congress reached for the term architectural plans when it meant to speak of architectural plans and did not include that amongst the types of works permitted to be made under 120a. And finally, the 1990 VARA addition to section 101 where there is a distinction made between drawings and technical drawings, technical drawings which include architectural works being lumped in with diagrams and models and things that don't qualify as visually protected works of art and pictures and paintings and photographs all qualifying as such. The statute treats these terms differently, puts them on different footing, copyright case law has for a while, and the absence of any of the terms associated with or used to refer to architectural floor plans is an important interpretive, it's an important statutory distinction that raises an important interpretive question. I would also say that it's important to be clear why this case arose. It's not that some homeowner just happened to make floor plans of their own personal home. I don't think anyone would be advocating that that should be a violation of copyright law. It's just that 128 does not need to do all the heavy lifting and operate as a panacea for every concern of over breadth. The Copyright Act carves out many exceptions, the most flexible one being section 107's fair use. The concern here is that a for profit enterprise tried to make money off the intellectual property of the architect who has intellectual property protections under the AWCPA in their floor plans. And if you look at the legislative history, it's clear what type of works and uses are being discussed here. It's about tourists taking photos of buildings, about tourists making paintings of buildings, that there is a distinction between the types of technical drawings and architectural plans that we believe are not permitted under 128 and paintings, photographs. It's a distinction between a painting or a photograph of a person and an x-ray. You mentioned that this is not really about a homeowner, but isn't that the effect of the decision? Not so much. I mean, I understand the homeowner, but if like here, the homeowner puts the house on sale, you know, for sale and produces a brochure that gives out the open house, you know, people coming to the open house, the effect of it is that that would be a copyright violation if we buy your argument. Am I wrong about that? Respectfully, I disagree for two reasons, and I would say no, that would not be an infringement. One, there's just a real clear statutory tool that 120A is not going to solve that problem. And that's that 120B expressly talks about homeowners and permitted uses of homeowners. There's no such language in 120A. But the more, the other thing is that, again, 128 is not, it's not the only tool to stop overbreadth of copyright. That's what fair use is for. So just because a particular use that we think is salient or innocuous and should not be punished under copyright law, we don't need 128 to do all the heavy lifting. 107 is well-equipped to do that in an ad hoc, case-by-case basis. Has your opponent argued fair use in this case? I believe, below, that they did assert fair use, but... But not on appeal, right? Not on appeal. I don't believe the district court ruled on that. And more importantly, we would take the stance that this particular use is not a fair use, because, again, it's not the homeowner making use of their personal property. It's a... Yeah, I understand. One of my questions had been, what I sent, the notion of fair use was involved in this case, but I think I understand what you're saying. It's the first thing that comes to your mind. I mean, there's nothing in 128 that excludes fair use as a possible defense. Is that correct? Absolutely not, yes. Each of the defenses operate independently, so no matter how we interpret 128, fair use is always there. Fair use is not dislodged by 128, and that's why it doesn't have to do all the heavy work and operate as a panacea for all concerns about... The matter wasn't raised in the district court, is that correct? The fair use defense, but not ruled on, is that what you're saying? That is my understanding, but was not ruled upon, and is not here on appeal. But we can affirm on any ground, right? Or reverse on any ground, or what? If this court were to weigh in on fair use, because it's a notoriously deviling issue, we would respectfully request supplemental briefing from the court to be able to apply the analysis of how we... Oh, thanks. Thanks very much. Thank you. But at a minimum, you'd suggest that if your interpretation of 128 prevails, the case would have to go back, and the district court would have to look at the fair use question. That's correct, Your Honor, yes. Okay. You know, on the statutory interpretation issue, it's really interesting, because the list is pretty wide. Pictures are an exact representation of the house. Of course, there is interpretation that goes into that. You've got paintings, which are not... Those are clearly an interpretation of the structure of the architectural work. And I wonder whether floor plans might be... You make the point that the division is expressive. Some of these are expressive works, and the floor plans are not. But another distinction is that some of these are interpretive, and floor plans would seem to fall under sort of the interpretive line as well. And so I'm wondering, why draw the line in expression? Why not draw the line at, this kind of looks like some of the other things in the list? I appreciate the question, Your Honor. Undeniably, what to make of 120A is a deviling question. I'm not here to suggest it's easy. And I think, just looking at 120A in isolation, those are absolutely equally plausible ways to divide it. Your proposed, you know, true to form, imposed by the world as I find it, first interpretive, or our proposed kind of utilitarian or technical, first more aesthetically expressive. But, as we all know, you have to interpret a particular section using the whole text canon and statutory usage throughout. First, it's just the clearest hook that this might not be such a wild distinction, is to point out the fact that architectural plans have always been treated as technical drawings. So that, I think, weighs in favor of our interpretation, as opposed to the one that you'd be proposing. And importantly, this isn't just kind of pair splitting. I mean, Congress went into mind-bending detail in trying to rework PGS, or Pictorial Graphic Sculptural Works, and its definition to accommodate for architectural works, in light of the U.S. joining the Berne Convention, which required us to add new types of copyright works to the statute. So, it used to read technical drawing, in the subset of Pictorial Graphic Sculptural, the definition in 101, it used to read technical drawings, diagrams, models. When they added architectural works, they switched it around to say, diagrams, models, technical drawings, comma, including architectural works. And this was a long-standing distinction that had been applied in the case law, and actually the predecessor 1909 Act expressly distinguished between technical drawings, or drawings of a technical nature, and pictorial illustrations. Additionally, contemporaneously to the AWCPA, the VARA section was added. And in VARA, we have this distinction between photographs, paintings, and drawings, which count as works of visual art, and technical drawings, diagrams, and models, which don't count. And so, for those reasons, I think, once we step back from 128 in isolation, it becomes clear that, while certainly it's a seemingly plausible, and I think the better interpretation is to just respect the fact that there's a long-standing, repeatedly codified, and even contemporaneously re-established in the statute, distinction between aesthetic-type works and technical-type drawings, the kind that architectural floor plans are. Doesn't 128 seem to contemplate certain kinds of productions that are available to people who can see the building from the outside? So isn't that an important consideration? I mean, one can't ordinarily, or perhaps ever, accurately draw a floor plan from looking at the building from the outside. Absolutely, Your Honor, and the way I would think of that is, if there was a statute that said you could take pictures, and photos, and paintings of people, and other such representations, and I came in with an x-ray, it's not unreasonable to draw a distinction between the type of thing that is available to the human eye versus something that's not apparent from viewing the building. And I think Your Honor's question is particularly on point because there are these little hints in 128. For example, to qualify for the exemption, the building has to be in a publicly available place. People have to be able to see the building from public. So our view is that it's fairly clear what Congress was trying to get at. If you take a peek at the legislative history, they're talking about the millions of tourists who come and snap photos, or art students who are out there painting, you know, pictures of a building, or paintings of a building. It's clearly not trying to give a blank check to a realtor organization to take the blueprints and make widespread commercial uses of the architecture's rights without giving any compensation or attribution. And we don't need to commit ourselves to their proposed view of 128 to allay the very serious concerns about overbreadth for a homeowner making understandable and perfectly acceptable uses of their own property. And I would also add, just because the question was raised, and if fair use were to be any grounds to be weighed into, we would very respectfully request additional briefing on that, but that analysis would shake out differently for the homeowner who's making a noncommercial use or a personal use and a corporation or a for-profit entity that's using architectural rights writ large to try and make a profit. That would just be a different analysis. So, again, I think there's kind of a... The two untenable positions that I think my friend across the aisle is making is that, one, there's just no basis for a distinction between pictorial and graphic. All parties are in agreement that the statute uses them together sometimes and doesn't use them together other times, and I think when you're only using pictorial, you're trying to exclude graphic and sculptural. Our colleague across the aisle says it would be illogical to draw such distinctions that we're drawing. I think they're currently in the Act. If you look into the case law, they've been discussed. We briefed that. And the 1909 Act expressly draws such a distinction, so we beg to differ that it's illogical. And we also just don't agree with the parade of horribles that's imagined here. Fair use is always lurking in the background, and it's better to give the judicial branch the flexibility to make these determinations on a case-by-case basis rather than committing itself to a one-time decision about whether architects have rights or realtors get carte blanche and do whatever they want for commercial purposes. It occurs to me, and I think this is right, that even if we didn't agree with your distinction between pictorial and graphic, nevertheless, that's not fatal to your case. That's right. It just kind of bounces suspenders. Isn't that correct? I mean, your main case, if I may so characterize it, is that the statute just is on its face, supports just one construction. Absolutely. Well, it supports the construction that they're talking about, making natural eye views of the buildings that are publicly visible. And then if you want to get your hands dirty, you could dig into a whole bunch of built-in suspenders for reasons to find out why that's the right answer. But yes. It seems to me your main argument, if I may so characterize it, is that this is just different from the other kind. It's a generic kind of argument. I think the page in your brief that was most effective was when you set out four examples of what these things might look like, and you asked which of these things is not like the other. Yes, Your Honor. Absolutely. And as much as I love— Well, this is not a robot. You are not a robot, in other words. No. As much as I love statutory interpretation, I probably could have just omitted the picture on that page and saved a lot of work. But with that, I'd like to reserve the rest of my time, if I may. Very well. Thank you, Mr. Keenan. Mr. Keel, the court will hear from you. You'll need to unmute your microphone, please. My apologies. May it please the court? My name is Patrick Keel, and I represent the defendants in both of these cases. Section 120A exempts the floor plans at issue here from infringement, and it's a blanket exemption—blanket statutory exemption. When Congress passed the Architectural Works Protection Act in 1990, they afforded Architectural Works limited protection, and 120A is an example of that. And it expressly excludes from infringement pictures, paintings, photographs, or other pictorial representations. And the language of 120A is broad. It didn't just exclude pictures, which Your Honor pointed out is an exact replication. It also exempted paintings, photographs, or other pictorial representations, which necessarily includes interpretive works. Painting is a great example. If I paint a home, that's clearly exempt. I think we would all agree. But what if I draw the home? Is that also a pictorial representation? And I would submit it is, because the only difference between a drawing and a painting is really the artist's tools, whether you use charcoal or a pencil or a paint. So in looking at this floor plan, in the two cases, they were created differently. In one case, it was created with a pencil and paper, graph paper, and a tape measure. And the artist went in and literally measured each room, wrote it down, and created a sketch of the floor plan. In the other one, the other case, that was done by means of a computer. Ultimately, the homeowner was using these floor plans to sell their home, just through a realtor. So both floor plans were used with homeowner consent. And I think I heard Mr. Keenan say, homeowners making a floor plan would not be a violation of copyright law. And I see no distinction here between a homeowner creating a floor plan and a homeowner having a realtor use a floor plan to try and sell it. I'm not sure he said that it wouldn't be a violation. I think he was suggesting that it might be subject to fair use. Okay, maybe I misunderstood. And to Your Honor's question about fair use, we have asserted fair use as a defense in this case. The district court has not yet had a chance to rule on it because it ruled on this 128 issue first. But the fair use defense was talked about in the passage of this act. Congress looked at a couple of things, and one of which was the fair use defense, because that was asserted. Well, why not deal with the fair use defense that's already on the books? And Congress noted that that requires an ad hoc determination every time. And so rather than do that and subject courts and potential litigants to having to litigate this issue every time, they passed a blanket exemption in the form of 120A and also 120B, which says the owners of a building... So if I buy a house, I can make alterations. I can remodel. So the architect may own the copyright in the architectural work, but as the owner of a building, I can remodel and change a room around. And 120B expressly allows that. So if 120B expressly allows it and I can go remodel my home, I may need a sketch of my floor plan to give to a contractor to remodel my home. So 120B is consistent with the notion that floor plans would be allowed under 120A in the other pictorial representations. Going back to 120A, it exempts these particular works, paintings, pictures, photographs, or other pictorial representations, if the building the work is embodied and is visible from a public space. And Your Honor touched on this one as well, because the interior may not be always visible from the public. However, the home in which the architectural work and the copyright resides is visible from a public place. So courts have interpreted that notion of 120A to also include the interior of the home. Now, the notion that floor plans should be included in 120A as a pictorial representation has support by the ordinary meaning of the statute. It has support by, like I said, 120B, the second part of the statute. It has support in the legislative history. It has support in the cases that have analyzed this issue. And there are two, and they're cited in the briefing, the Sorenson case and the Morgan case. Both of those cases, they're district court cases, but both decided this issue and came to the conclusion that floor plans are clearly included in Section 120A's definition of pictorial representations. Now, one thing that I think needs to be addressed is the fact that design works, in this case, refers to floor plans as architectural drawings and technical plans, almost exclusively. And those, I think, I think there's a distinction there. The floor plans at issue in this case are not buildable blueprints, as design works argues. They are not, there's no evidence that any home was ever constructed with these plans or that a home could be constructed with these plans. These are simple top view drawings showing the room layouts of the homes and the size of the rooms. And I think there's an important distinction between architectural plans and the floor plans at issue in this case. And design works' entire argument rests on that assumption that these are buildable architectural plans. And that distinction is important because if I have a plan, a floor plan, and I go build a home with it, then I may infringe a copyright by building a home that infringes the copyright in the home. So, if in that instance, the copyright holder of the copyright in the architectural work would have a remedy against infringement of the second home that infringes the architectural work. Now, if this court were to rule that floor plans are somehow excluded by 120A, that would lead, or not excluded by 128, that would lead to some absurd results. So, if a child were drawing a picture of a home and maybe the child drew a room or something that looked like a floor plan, that could be considered an infringement. Yet, if an architect came in and painted a floor plan with a paintbrush, and so the end result looked like a floor plan but it was with a paintbrush and was a painting, that would be okay. It's hard to reconcile those two outcomes. I want to ask you about, you said initially a few minutes ago, I was just mullied over in my head, you said floor plans can't be turned into buildable homes, that you need architectural plans. But then you sort of walked that back and said if a floor plan were then used to build a home, then you would have a copyright infringement by virtue of building that home. So, I'm trying to wonder, couldn't, I mean, you're right, that architectural plans tend to be more specific and include more specific measurements than a simple floor plan, which might just show the room is 20 feet by 10 feet and, you know, nothing necessarily in between. But couldn't that be used to build a home and isn't that the risk that's posed here, potentially? Fair. So, I think in this case, there's no evidence that these particular floor plans could be used to build a home. There was never an architect that came in and said, yeah, I could build a home with these plans. And I think in general, these are probably not specific enough. However, if it were the case where somebody could build a home with one of these floor plans and did in fact do that, then my point is there's a remedy there for the copyright holder because the second home infringes. So, the floor plan can still be exempt from infringement and the copyright holder then has a remedy when the home is built. The copyright holder is not left without a remedy if 120A exempts floor plans from infringement, is my point. Thank you. Let's turn to the graphic versus pictorial distinction. The court does not need to decide that. One, this argument was waived at the district level because it was never argued. But more importantly, this expressive versus utilitarian distinction that DesignWorks makes is really a fiction because if you're talking under the copyright laws, if there's a utilitarian aspect of a work, the protectable portions of that work exclude those utilitarian aspects. So, there may be some works that are utilitarian such as a globe, but the aesthetic portions of that are what are protectable. So, the distinction between, you know, the one-on-one definition of pictorial, graphic, and sculptural works, the ones that are expressive are pictorial and the others are graphic. That distinction is really a fiction. DesignWorks did not talk about it today, but in the briefing they talk about 128 does not provide a complete defense to infringement, that it really impacts remedies, and I think that's a faulty argument. There are three circuit courts that have characterized Section 128 as an exemption. The Federal Circuit in the Gaylord case, the Ninth Circuit in the Warner Brothers case, and the First Circuit in the Tepe case have all characterized Section 128 as an exemption from infringement. And then the two district court cases, the Sorensen case and the Builders Mutual case, and all of these are cited in our briefing, Builders Mutual calls Section 128 a blanket exception to infringement. Now, turning to, got a few minutes, I want to talk about the fee award in this case, which is also on appeal. The district court in this case did not abuse its discretion in awarding fees. There's no dispute that appellees were the prevailing party. What may not be clear in the briefing, and I want to make clear today, is that DesignWorks brought a number of different claims, all of which were dismissed on summary judgment, only one of which is at issue today, which is the 128 claim. But DesignWorks also brought claims for infringement of different works, different homes entirely, vicarious liability claims to which the court characterized as not rooted in reasonable facts or discovery that tend toward frivolity and that are factually baseless. And DesignWorks also brought a claim under VARA, which clearly did not apply under the statute and the court ruled as such. So the fact that DesignWorks brought all those claims and those were all dismissed on summary The damages sought in this case, in one of the cases, were $13.5 million in damages, and the fee award was reasonable in light of the damages sought. For the reasons that we've talked about today, the district court did not abuse its discretion in awarding fees, and Section 128 provides a blanket exception to infringement for the floor plans at issue in this case, and the court should affirm. Thank you. Thank you, Mr. Keel. Mr. Keenan, you have a little bit of rebuttal time. Thank you, Your Honor. I would just, the question about whether this is a buildable floor plan or just an architectural plan or just a floor plan, it's important to note that that doesn't really get us out of the interpretive question because my colleague has not given any reason to think that no matter how buildable, that wouldn't qualify as a pictorial representation being swept up in 120A as well. And moreover, it just creates a dispute of material fact. The Ninth Circuit in Leicester, 232 F.3d at 1216, called the proper classification of a copyrighted work a question of fact. So if that's the sticking point, then summary judgment was improper on those grounds. Thank you, Your Honors. Very well. Thank you, Counsel. We appreciate your appearance and arguments today. Case will be submitted and decided in due course.